E-FILED
Thursday, 18 February, 2016  04:35:05 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAMES F. WILLIAMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-3064 |
| | ) | |
| SANGAMON COUNTY JAIL, *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a Fourteenth Amendment claim for inhumane conditions-of-confinement and inadequate medical care related to his incarceration at the Sangamon County Jail.  The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment.  (Doc. 35).  The motion is granted.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

At all times relevant, Plaintiff was a pretrial detainee at the Sangamon County Jail ("jail").  Defendants were all employed at the jail in various capacities:  Defendant Durr was the Superintendent; Defendant Strayer was the Assistant Superintendent; and Defendants Loftus, Clemons, and Cane were correctional lieutenants.

On December 7, 2013, Plaintiff required medical care to treat an infection on his right big toe.  According to Plaintiff, the toe became infected after Plaintiff used a jail-provided pair of toenail clippers to clip his toenail approximately one week prior.  Plaintiff received treatment at the hospital and was prescribed antibiotics to treat the infection.  At some time before Plaintiff went to the hospital, jail medical staff treated Plaintiff's infection with antibiotics and pain medication.  Plaintiff admitted that all his requests for medical treatment were answered.  Pl.'s Dep. 42:14-17.  Medical records suggest that Plaintiff's infection was caused by the Staphylococcus aureus bacteria ("S. aureus").[1]  (Doc. 37 at 13).

Defendants provided evidence of the jail nail clipper policy via affidavit.  Per the alleged policy in effect in December 2013, jail officials provided a clean pair of nail clippers to individual inmates upon written request.  After use, the clippers were placed in a cleaning solution.  Clippers were provided only on weekends.

Plaintiff agrees that the clippers were provided only on weekends.  Plaintiff disputes that the jail had in place the policy

---

[1] Plaintiff's medical condition is more commonly referred to as a "Staph infection" and was readily treatable with antibiotics.  Neither party alleges, nor does the record support, that Plaintiff suffered from the related, and more serious, condition "methicillin-resistant staphylococcus aureus" or "MRSA."

Defendants now aver.  If there were such a policy, Plaintiff asserts, it was not followed.  Instead, jail officials provided one pair of fingernail clippers and one pair of toenail clippers for a unit housing approximately 30 people.  As stated by Plaintiff: "the first person would go and get the toenail and finger clippers and use them and pass them onto the next person to use.  And the next person after that would get them and use them, so on and so forth…."  Pl.'s Dep. 16:24-17:6.  Defendants deny personal knowledge of the practice alleged by Plaintiff.

After the incident occurred, Plaintiff informed the jail officials via a written request form and requested that a new policy be developed regarding the distribution of nail clippers.  (Doc. 37 at 9).  According to the notations on this request, jail officials forwarded Plaintiff's request to the appropriate parties and, within a week, jail officials ordered supplies to effect a new policy.

## ANALYSIS

As a pretrial detainee, Plaintiff's claim arises under the Fourteenth Amendment's due process clause, rather than the Eighth Amendment's proscription against cruel and unusual punishment.  <u>Mayoral v. Sheahan</u>, 245 F.2d 934, 938 (7th Cir.

2001). Despite this distinction, there exists "little practical difference between the two standards." Id. (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)).

## Conditions-of-Confinement

The standard for analyzing a conditions-of-confinement claim in the corrections context is well-established: a prison official is liable for denying a prisoner of his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008). The court must first determine whether the conditions at issue were "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 832, 834 (1994) (internal quotation marks omitted); see also Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). Jail conditions may be uncomfortable and harsh without violating the Constitution. See Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir.1996) (citing Farmer, 511 U.S. at 832). Therefore,

"extreme deprivations are required to make out a conditions-of-confinement claim." <u>Henderson v. Sheahan</u>, 196 F.3d 849, 845 (7th Cir. 1999) (quoting <u>Hudson</u>, 503 U.S. at 9).

Defendants argue that Plaintiff has failed to show that he suffered a sufficient deprivation.  Plaintiff responded by arguing that S. aureus was "rampant" at the facility and failure to provide clean nail clippers exposed him to a serious risk of infection.  In the first sense, Plaintiff is correct—there is a good chance that S. aureus was present at the jail.  As noted by one district court in this circuit, "Staphylococcus aureus is a bacteria that is normally found on the skin, or in the nose, of 20% to 30% of healthy people." <u>Staffa v. Pollard</u>, No. 13-CV-5, 2015 WL 5023931, at *2 (E.D. Wis., filed August 25, 2015).  Plaintiff, however, does not provide anything more than speculation regarding the presence of S. aureus at the jail, much less that its degree exceeded those levels typically found in nature.

Moreover, despite Plaintiff's allegations that S. aureus was prevalent at the facility before his toe became infected, and that he had suffered prior infections when his body came into contact with bacteria from other individuals, Plaintiff still used nail clippers he

described as having "[r]ust buildup, things that may have been
blood on there, toenail clippings...trimmings inside there."  Pl.'s
Dep. 61:8-62:14.  The fact that jail officials responded quickly once
made aware of the clipper problem suggests that had Plaintiff
alerted jail officials at that time, Plaintiff would not have suffered
the injury now in dispute.  Plaintiff's decision to use the clippers
and not avail himself of available options to inform jail staff negates
a finding that any deprivation Plaintiff suffered was a form of
punishment proscribed by the Constitution.  See Freeman v. Berge,
441 F.3d 543, 545 (7th Cir. 2006) (an "author of his own
deprivation" is not a victim of punishment).  Thus, no reasonable
juror could conclude that Plaintiff suffered the requisite deprivation.

Even if Plaintiff could show a sufficient deprivation, Plaintiff
cannot show that the Defendants were deliberately indifferent.
Deliberate indifference is more than negligence, but does not
require the plaintiff to show that the defendants intended to cause
harm.  Mayoral, 245 F.3d at 938.  Liability attaches when "the
official knows of and disregards an excessive risk to inmate health
or safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at
837.

Plaintiff does not dispute that no other inmate complained to
the Defendants regarding use of the clippers, nor is there any
evidence that other inmates suffered infections as a result.  In fact,
Plaintiff testified that he used the clippers at the jail every two-to-
three weeks for approximately 18 months without issue.  Pl.'s Dep.
22:1-23:22 (use every two-to-three weeks); <u>Id.</u> 13:13-19 (no
problems with either big toe prior to December 2013).  Nothing in
the record suggests that a risk of infection was substantial or
obvious, or that the Defendants had knowledge of it.  Therefore, the
Court finds that no reasonable juror could conclude that the
Defendants were deliberately indifferent.

### Deliberate Indifference to a Serious Medical Need

To prevail on a claim for inadequate medical care, the Plaintiff
must show that the jail official acted with deliberate indifference to
a serious medical need.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976).
A medical condition is serious "where the failure to treat a
prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain." <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1373 (7th Cir.1997) (citation omitted).

   In evaluating the seriousness of a medical condition, the court evaluates several factors: (1) whether failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain; (2) whether a reasonable doctor or patient would find the alleged injury worthy of comment or treatment; (3) the existence of a medical condition that significantly affects daily activities; and, (4) the existence of any chronic and substantial pain. <u>Id.</u> Though Plaintiff's infection was relatively short-lived, a reasonable juror could conclude that Plaintiff suffered from an objectively serious medical need based upon the factors listed above.

   Plaintiff, however, cannot show that jail officials, much less the Defendants, were deliberately indifferent. By Plaintiff's own admission, jail officials honored each of his requests for medical care. When his condition suddenly worsened, jail officials transported Plaintiff to a hospital where he received the proper treatment. Based on this, no reasonable juror could conclude that the Defendants were deliberately indifferent.

## Personal Involvement of the Defendants

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted). A plaintiff must show that each official, "though the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). A government official may not be held liable under § 1983 on a theory of respondeat superior, that is, for the unconstitutional acts of his or her subordinates. Id. To be held liable, a government supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." Vance, 97 F.3d at 993 (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)).

Plaintiff allegations against the Defendants relate to their supervisory roles within the jail. Plaintiff does not dispute that none of the Defendants gave him the clippers in question and that the clippers were typically distributed on days where the Defendants were not on duty. Therefore, the Court finds that

Plaintiff has failed to show the necessary personal involvement of

the Defendants to impose liability under Section 1983.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment [35] is GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. <u>See</u> Fed. R. App. P. 24(a)(1)(c); <u>see also</u> <u>Celske v Edwards</u>, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); <u>Walker v. O'Brien</u>, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:      February 18, 2016.

FOR THE COURT:

*s/Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
